IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 14-0561-WS-B |
| ) | |
| $34,796.49, more or less, in U.S. Currency, ) | |
| One Taurus .45 caliber handgun, Serial ) | |
| Number NQE77433, One Taurus .38 caliber ) | |
| revolver, Serial Number TE 3600WITH, and ) | |
| One Smith & Wesson .40 caliber pistol, ) | |
| Serial Number RAT4545, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on claimant Jeffery Tubbs' Motion to Dismiss (doc. 14). The Motion has been briefed.

**I.      Background.**

On December 4, 2014, the Government filed its Verified Complaint for Forfeiture *In Rem* (doc. 1) against the following *in rem* defendants: $34,796.49, more or less, in U.S. Currency; One Taurus .45 caliber handgun, Serial Number NQE77433; One Taurus .38 caliber revolver, Serial Number TE 3600WITH; and One Smith & Wesson .40 caliber pistol, Serial Number RAT4545. The Complaint specified that this civil forfeiture action was brought against the defendant currency to enforce 21 U.S.C. § 881(a)(6) (providing for civil forfeiture of money that constitutes proceeds of a violation of the Controlled Substance Act) and 18 U.S.C. § 981(a)(1)(C) (providing for civil forfeiture of property that constitutes proceeds of an offense involving theft, conversion or sale of public money, vouchers or other things of value to the United States), among other provisions. (Doc. 1, ¶¶ 1-4.) Also by its terms, the Complaint was brought against the defendant firearms to enforce 21 U.S.C. § 881(a)(11) (providing for civil forfeiture of firearms used to facilitate the sale or possession of controlled substances) and 18 U.S.C. § 924(d)(1) (providing for civil forfeiture of firearms involved or used in violations of §

922(g)(3), which prohibits unlawful users of controlled substances from possessing firearms). (*Id.*, ¶¶ 5-6.)

As filed, the Complaint was neither conclusory nor vague; to the contrary, the Government's pleading set forth more than six pages of particularized factual allegations, describing the seizure of the *in rem* defendants in Marion, Alabama, as well as the factual grounds for the Government's contention that defendants are subject to civil forfeiture pursuant to the above-referenced statutes. (*Id.*, ¶¶ 10-26.) The Complaint alleged that federal subject matter jurisdiction lies pursuant to 28 U.S.C. § 1345 (inasmuch as this action was commenced by the Government) and 28 U.S.C. § 1355(a) (inasmuch as this action is one for forfeiture *in rem*). With respect to venue, the Complaint relied on 28 U.S.C. § 1355(b)(1)(A), and asserted that acts or omissions giving rise to the forfeiture took place in this district.

On January 5, 2015, Jeffery Tubbs filed a Claim to Property Seized (doc. 10), in which he claimed a 100% ownership interest in two of the *in rem* defendants in this case, to-wit: the $34,796.49, more or less, in U.S. Currency; and the Taurus .45 caliber handgun, Serial Number NQE77433. Eight days later, Tubbs filed a Motion to Dismiss (doc. 14), in which he sought dismissal of the Complaint as it relates to the defendant U.S. Currency on grounds of lack of subject matter jurisdiction (based on untimeliness of the Complaint), failure to state a claim, lack of *in rem* jurisdiction, and improper venue. The Government opposes the Motion.

**II.     Analysis.**

   *A.     Timeliness Objection.*

Tubbs' principal ground for moving for dismissal is his contention that the Government did not file the Complaint in a timely manner. On that point, Tubbs shows that he mailed a claim of ownership concerning the $34,796.49 in U.S. Currency to the U.S. Secret Service Deputy Director of Investigations via UPS Next Day Air on September 2, 2014. (Doc. 14, Exh. A, at 4-9.) Significantly, UPS tracking information confirms delivery of this mailing to the designated address on Wednesday, September 3, 2014, at 9:58 a.m. (*Id.* at 10.)[1] The Government filed its

---

[1] Documents in the court file confirm that the address to which Tubbs shipped his claim was that which he had been directed to use in the Secret Service's notice to interested parties pursuant to 18 U.S.C. § 983(a)(1)(A)(i). (*See* doc. 19, Exh. 1 at 4; doc. 19, Exh. 2.) Moreover, in transmitting his claim via UPS, Tubbs adhered to the Secret Service's directive in said notice to interested parties that shipments to that address be made "via commercial carrier." (Doc. 19, Exh. 1 at 4.)

Complaint for Forfeiture *In Rem* on Thursday, December 4, 2014, exactly 92 days after delivery of Tubbs' claim to the Secret Service offices in Washington, DC.

In his Motion to Dismiss, Tubbs maintains that the interval preceding the Government's filing of the Complaint was excessive under applicable law. Both sides concur that this civil forfeiture action is governed by 18 U.S.C. § 983 (part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA")), which provides in pertinent part as follows:

> "***Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture*** in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties."

18 U.S.C. § 983(a)(3)(A) (emphasis added). The statute further provides that if the Government does not file a civil forfeiture complaint or return the property as provided in § 983(a)(3)(A), then "the Government shall promptly release the property … and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B). Quite simply, Tubbs' position is that (i) the Government failed to file the civil forfeiture complaint within the 90-day period specified in § 983(a)(3)(A); and (ii) the Government is therefore bound by § 983(a)(3)(B) to release the defendant U.S. Currency and relinquish its efforts to effect civil forfeiture of same.

In its Response, the Government counters that the Complaint was filed within the requisite 90-day period. To craft such an argument, the Government disregards the September 3, 2014 delivery date of Tubbs' claim (as shown in the UPS tracking data), and instead posits that the 90-day clock commenced running on Friday, September 5, 2014, when Tubbs' claim "was received by [the Secret Service] Asset Forfeiture Division." (Doc. 19, at 2.)[2] The Government proceeds to explain in detail why the time period from September 5, 2014 to December 4, 2014 does not exceed 90 days. (*Id.* at 4-6.)

---

[2] As proof of the September 5 "receipt" date, the Government points to a time-stamp on Tubbs' cover letter, which purports to show that the document was received by the U.S. Secret Service Asset Forfeiture Division at 11:38 a.m. on September 5, 2014. (Doc. 19, Exh. 2.) The Government also cites a September 9, 2014 acknowledgment letter from the Secret Service to Tubbs' counsel, in which the Secret Service "acknowledges that the claim and hardship petition you filed on behalf of your client Jeffery Tubbs were received on September 5, 2014 by the United States Secret Service." (Doc. 19, Exh. 3.)

That's all well and good, but the Government's Response glosses over the fundamental premise underlying its computations (*i.e.*, the use of September 5, rather than September 3, as a start date for the 90-day clock under § 983(a)(3)(A)).  Moreover, while Tubbs' Reply (doc. 20) lambasts the Government for selecting September 5 as a starting point instead of September 3, Tubbs offers neither authority nor legal argument in support of his proffered September 3 start date.  The question, quite simply, is this:  Does the 90-day deadline prescribed by § 983(a)(3)(A) for the Government to file a civil forfeiture complaint commence running with the delivery of the claim to the proper agency's mailroom, or with the opening and time-stamping of the claim by the proper division / office / person within that agency?  Both sides' briefs are eerily silent on this critical point of law.

Fortunately, there is directly on-point persuasive authority.  Most recently, the District of Arizona examined this precise question in *United States v. $229,850.00 in U.S. Currency*, --- F. Supp.3d ----, 2014 WL 4793704 (D. Ariz. Sept. 25, 2014), a case bearing striking similarities to this one.  In *$229,850.00 in U.S. Currency*, the court held that "the claim is filed when it is received by the mailroom of the agency where the claimant is directed to send the claim," not when it is received by a particular official or office within that the agency.  *Id.* at *6.  In reaching this conclusion, the Arizona district court relied on the following considerations: (i) Congress's purpose in enacting § 983 was "to provide increased protections for claimants;" (ii) the statutory requirement that the Government release seized property when it fails to file a forfeiture complaint within 90 days is intended to be a "sanction" for such failure; (iii) "because forfeitures are disfavored, forfeiture laws are strictly construed against the government;" (iv) the statute is a two-way street prescribing filing deadlines for both claimants and Government alike, and the Government's proposed interpretation of § 983(a)(3)(A) "would wrest from claimants all control over timely filing" of their claims, leaving them at the whims of whatever mailroom procedures the agency might have in place; (v) the Government's proposed interpretation would "eviscerate the 90-day limitation period" by creating unlimited potential for automatic enlargements based on delays in the intra-agency delivery and processing of the claim; and (vi) the claimant's proposed interpretation was "in line with the protections that CAFRA sought to provide for claimants by imposing statutory deadlines applicable to civil forfeiture procedures." *Id.* at *4-5. The Court finds the comprehensive, sound reasoning of *$229,850.00 in U.S. Currency* to be persuasive.

Furthermore, the undersigned's research confirms that *$229,850.00 in U.S. Currency* is anything but an outlier in § 983(a)(3)(A) jurisprudence; to the contrary, it falls neatly in line with the prevailing sentiments among courts that have considered this issue.  *See, e.g., U.S. v. $183,026.36 in U.S. Currency*, 2014 WL 3734172, *4 (N.D. Ind. July 29, 2014) (observing that "[t]he overwhelming majority of cases hold that a claim is deemed 'filed' when it is received by the seizing agency," and equating date of receipt with date of delivery, as shown on certified mail receipt); *United States v. Funds from Fifth Third Bank Account*, 2013 WL 5914101, *7 (E.D. Mich. Nov. 4, 2013) (rejecting Government's argument that a claim is "filed" for CAFRA purposes when it is received by the office of the official handling the claim, and instead concluding "that the better interpretation is that a claim is filed when it is actually received by the seizing agency"); *Beck v. United States*, 2011 WL 862952, *4 (D. Md. Mar. 10, 2011) (finding no merit in Government's interpretation of § 983(a)(2)(A) as requiring that "in order to be considered filed, a claim must come into the possession of a specific individual," rather than being delivered to the agency at the specified address); *see generally United States v. $38,000.00 Dollars in United States Currency*, 816 F.2d 1538, 1547 (11th Cir. 1987) ("If anything, the burden on the government to adhere to the procedural rules should be heavier than on claimants.  Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required.").[3]

In light of the foregoing, the Court concludes that a claim is "filed" for § 983(a)(3)(A) purposes upon delivery to the designated agency at the address specified in the notice to interested parties, not when it is time-stamped as having reached the desk of a particular person or division of that agency.  Here, the uncontroverted evidence is that Tubbs' claim of ownership of the U.S. Currency was delivered to the U.S. Secret Service at the proper address on the

---

[3] That said, the Court recognizes that case law is not unanimous in interpreting CAFRA's use of the term "filed" as meaning delivery to the agency's mailroom.  *See United States v. Eight Hundred Thousand One Hundred Twenty Seven Dollars and Seventy Cents*, 2005 WL 6967051, *1 (D.D.C. Mar. 30, 2005) ("The court holds that the government's interpretation of 'filed' as arriving at the FBI's Asset Forfeiture Unit [rather than at the FBI's mail room] is reasonable and thus denies the claimants' motion.").  Nonetheless, the Government appears to cast its lot with the majority rule, noting that "[a]uthorities have held that such claims are deemed 'filed' when received by the agency."  (Doc. 19, at 3.)  Unquestionably, the agency received Tubbs' claim on September 3, even though it did not reach the Asset Forfeiture Division until September 5.

morning of Wednesday, September 3, 2014. As such, the 90-day period prescribed by § 983(a)(3)(A) for the Government to commence a civil forfeiture action as to the defendant U.S. Currency began running on September 3, and expired on Tuesday, December 2, 2014. The Government did not file its Verified Complaint for Forfeiture *In Rem* until December 4, 2014, some 92 days after Tubbs' claim was "filed" within the meaning of CAFRA. The Complaint is therefore untimely for purposes of 18 U.S.C. § 983(a)(3)(A). As a result, it would appear that the § 983(a)(3)(B) "sanction" imposed by CAFRA for the Government's failure to file a timely complaint is in play.

At this point, however, the waters become muddied based on the posture of the parties' arguments. In his Motion to Dismiss, Tubbs couched the timeliness defect exclusively in terms of "lack of subject matter jurisdiction." (Doc. 14, at 1.)[4] In its Response, the Government seized on Tubbs' framing of this objection as being jurisdictional in nature, and correctly asserted that noncompliance with the 90-day deadline does not strip this Court of subject matter jurisdiction. *See, e.g., United States v. Vazquez-Alvarez*, 760 F.3d 193, 198 (2nd Cir. 2014) ("[A] late-filed forfeiture action would not deprive the district court of subject matter jurisdiction. The provisions of § 983 are procedural rules for pursuing the forfeiture of seized assets, not conditions of subject matter jurisdiction.") (citations and internal marks omitted).[5] Jurisdiction over this matter was and is properly conferred by 28 U.S.C. § 1355, which provides that "district courts shall have original jurisdiction … of any action or proceeding for the recovery or

---

[4] To be sure, a separate section of the Motion to Dismiss stated, without elaboration, that "The USA's complaint fails to state a claim upon which relief can be granted." (Doc. 14, at 2.) However, nothing in the text of the Motion provides any inkling that this opaque reference to Rule 12(b)(6) was intended to relate to the timeliness issue presented in the "lack of subject matter jurisdiction" section of the Motion.

[5] *See also United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) ("we conclude that the 90-day deadline imposed in § 983(a)(3) is not jurisdictional"); *U.S. v. $13,963.00, More or Less, in U.S. Currency*, 793 F. Supp.2d 809, 814 (S.D. W.Va. 2011) ("the Court finds that a failure to comply with the 90-day deadline is a nonjurisdictional requirement"); *$229,850.00 in U.S. Currency*, 2014 WL 4793704, at *10 ("[T]here is no clear language suggesting that § 983(a)(3)(A) is jurisdictional. Nor do contextual considerations support the conclusion that the statute is jurisdictional."); *United States v. Funds in the Amount of Three Hundred, Nine Thousand And Seven Hundred Fifty Dollars ($309,750.00)*, 2009 WL 1974425, *2 (N.D. Ill. July 8, 2009) (rejecting claimant's argument that "the government's failure to comply with § 983(a)(3)(B) would act to divest this court of subject matter jurisdiction").

enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress." 28 U.S.C. § 1355(a).[6]  Tubbs' characterization of his timeliness objection as a deprivation of subject matter jurisdiction is thus legally infirm, and his Motion to Dismiss is meritless insofar as it is brought under Rule 12(b)(1), Fed.R.Civ.P.

In his reply brief, however, Tubbs reverses course and recharacterizes his Motion to Dismiss.  He expressly admits that "the Court has jurisdiction over this matter" (doc. 20, at 2), thereby undercutting his own Motion.  Tubbs insists, however, that dismissal remains proper on timeliness grounds, reasoning that "the USA lacks the statutory standing or authority to pursue this matter any further" given its noncompliance with the 90-day filing deadline.  (*Id.*)  This theory bears the hallmarks of a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), as opposed to the previously asserted (and now jettisoned) Rule 12(b)(1) jurisdictional attack.  The trouble, of course, is that Tubbs zigzagged in this manner in a reply brief, after it is too late for the Government to respond.  The Court does not have the benefit of any briefing or response by the Government on the Rule 12(b)(6) dimension of Tubbs' timeliness objection, because Tubbs never framed his claim in that light until his reply.

That said, the undersigned has made a finding that the Complaint is untimely under § 983(a)(3) as to Jeffery Tubbs' claim of ownership of the U.S. Currency defendant.  The time to resolve the implications of that determination is now.  It would be an unproductive, inefficient use of time and resources flatly to deny the Motion to Dismiss as unfounded under Rule 12(b)(1), given the inevitability that Tubbs would refile the Motion under Rule 12(b)(6) as he attempts to parlay the untimeliness of the Complaint into dismissal of this civil forfeiture action as it relates to the subject U.S. Currency.  Accordingly, and in light of Tubbs' representations in his Reply (doc. 20), the Court construes the Motion to Dismiss (doc. 14) as it relates to timeliness as having been brought pursuant to Rule 12(b)(6).  The Government is **ordered** to file a supplemental memorandum of law on or before **February 23, 2015**, addressing whether dismissal of this aspect of the Complaint for failure to state a claim is required or appropriate, given the judicial determination that the Complaint was untimely as to the defendant U.S. Currency in accordance with § 983(a)(3)(A).  Tubbs is **ordered** to file a supplemental

---

[6]     Additional statutory authority establishing the necessary jurisdictional predicate may be found in 28 U.S.C. § 1345, which confers upon district courts original jurisdiction over civil actions commenced by the United States.

memorandum addressing these issues on or before **March 2, 2015**, at which time the Court will take under submission the Rule 12(b)(6) aspect of the timeliness objection raised in the Motion to Dismiss.

      B.     *Claimant's Other Grounds for Seeking Dismissal.*

Tubbs' Motion to Dismiss identifies in cursory, laundry-list fashion three other grounds for dismissal of this action. He develops none of these arguments, all of which appear on their face to be devoid of merit. First, Tubbs states that the Complaint "fails to state a claim upon which relief can be granted." (Doc. 14, at 2.) Claimant provides no specifics as to how he contends the Complaint is deficient under a Rule 12(b)(6) standard. He neither relates this assertion to his timeliness objection nor sets forth any other colorable basis for the argument. As noted, the Complaint alleges with substantial particularity facts showing how the *in rem* defendants were seized, why the Government contends that their forfeiture is appropriate under various federal statutes, and how the Government intends to meet its burden of proof at trial. Aside from the timeliness issue addressed *supra*, the Court perceives no aspect of the Complaint as to which a Rule 12(b)(6) objection might be cognizable. Certainly, Tubbs has identified none.

Second, Tubbs states that "[t]his Court lacks *in rem* jurisdiction." (Doc. 14, at 2.) Once again, he does not say why he believes that to be true. "*In rem* jurisdiction derives entirely from the court's control over the defendant *res*." *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1435 (11th Cir. 1991); *see also United States v. Six Thousand Two Hundred Seven Dollars ($6,207.00) in U.S. Currency*, 2009 WL 2169167, *4 (M.D. Ala. July 20, 2009) ("A court acquires jurisdiction over the property in an *in rem* proceeding when the *res* is validly seized and brought within the control of the court.") (emphasis and citations omitted). Tubbs identifies no facts showing, and the Court perceives no circumstances indicating, that the defendant U.S. Currency was not properly seized or that it is somehow outside the control of this Court. To the contrary, the Clerk of Court issued a Warrant for Arrest (doc. 2) for the subject U.S. Currency on December 8, 2014, and such U.S. Currency was seized by the U.S. Marshals Service pursuant to that Warrant on December 10, 2014 (doc. 18.) Plainly, there is *in rem* jurisdiction over the defendant U.S. Currency in this case.

Third, Tubbs states, once again in conclusory fashion, his contention that "[v]enue is improper." (Doc. 14, at 2.) Such an argument cannot be reconciled with applicable law. By statute, "[a] forfeiture action or proceeding may be brought in … the district court for the district

in which any of the acts or omissions giving rise to the forfeiture occurred," 28 U.S.C. § 1355(b)(1)(A), or "in the district where it accrues or the defendant is found." 28 U.S.C. § 1395(a).  The Complaint alleges in considerable detail facts showing that at least a portion of the underlying alleged criminal activity giving rise to these forfeiture proceedings transpired in Marion, Alabama, and that the *in rem* defendants were all found in the same location.  The town of Marion, Alabama, is located in Perry County, Alabama, which is part of the Southern District of Alabama.  *See* 28 U.S.C. § 81(c)(1).  Accordingly, it cannot be reasonably disputed that venue is proper here.

### III.   Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. The Government is **ordered** to file a supplemental memorandum of law on or before **February 23, 2015**, limited to the issue of whether dismissal of the portion of the Complaint seeking forfeiture of U.S. Currency is required or appropriate for failure to state a claim, given the Court's finding that the Complaint was not timely filed as to that *in rem* defendant pursuant to § 983(a)(3)(A);
2. Tubbs is **ordered** to file a supplemental memorandum limited to this issue on or before **March 2, 2015**, at which time the Court will take under submission the Rule 12(b)(6) aspect of the timeliness objection raised in the Motion to Dismiss; and
3. In all other respects, the Motion to Dismiss (doc. 14) is **denied**.

DONE and ORDERED this 9th day of February, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE