IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 14-0561-WS-B |
| | ) |
| $34,796.49, more or less, in U.S. Currency, | ) |
| One Taurus .45 caliber handgun, Serial | ) |
| Number NQE77433, One Taurus .38 caliber | ) |
| revolver, Serial Number TE 3600WITH, and | ) |
| One Smith & Wesson .40 caliber pistol, | ) |
| Serial Number RAT4545, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on the Government's Motion to Strike (doc. 22), claimants' Motion to Amend Claims and/or Answers (doc. 25), and claimant Jeffery Tubbs' Motion to Strike (doc. 30). All three Motions are ripe. Also pending is claimant Jeffery Tubbs Motion to Dismiss (doc. 14), as to which supplemental briefing has been completed.

**I.    Background.**

On December 4, 2014, the Government filed a Verified Complaint for Forfeiture *in Rem* (doc. 1) against the following *in rem* defendants: $34,796.49, more or less, in U.S. Currency (the "Currency"); One Taurus .45 caliber handgun, Serial Number NQE77433; One Taurus .38 caliber revolver, Serial Number TE 3600WITH; and One Smith & Wesson .40 caliber pistol, Serial Number RAT4545 (collectively, the "Firearms"). The Government alleges that the Currency is forfeitable under 21 U.S.C. § 881(a)(6), as proceeds of a violation of the Controlled Substances Act; and under 18 U.S.C. § 981(a)(1)(C), as proceeds of an offense involving theft, conversion or sale of public money or vouchers. The Government further alleges that the Firearms are forfeitable under 21 U.S.C. § 881(a)(11), as they were used to facilitate the sale or possession of controlled substances; and under 18 U.S.C. § 924(d)(1), as they were possessed by an unlawful user of controlled substances.

In the weeks after the Verified Complaint was filed, three claimants stepped forward, all represented by the same counsel of record. Claimant Jeffery Tubbs filed a "Claim to Property Seized" (doc. 10) on January 5, 2015, pursuant to which he claimed a 100% ownership interest in each of the defendant Currency and the defendant Taurus .45 caliber handgun. On the same date, claimant Norman Rean Tubbs filed a "Claim to Property Seized" (doc. 11), in which he claimed a 100% ownership interest in the defendant Taurus .38 caliber revolver. Contemporaneously with the others, claimant Joacandra L. Childs filed a "Claim to Property Seized" (doc. 12), in which she claimed a 100% ownership interest in the Smith & Wesson .40 caliber pistol. On January 16, 2015, Norman Tubbs and Joacandra Childs jointly filed an Answer (doc. 17) setting forth a "General Denial" of the Complaint, plus a recitation of seven purported "Affirmative Defenses." For his part, Jeffery Tubbs did not file an Answer, but instead submitted a Motion to Dismiss (doc. 14) the Verified Complaint as untimely with respect to the defendant Currency, pursuant to 18 U.S.C. § 983(a)(3)(A). To date, neither an Answer nor a Motion to Dismiss has been filed with respect to Jeffery Tubbs' claim of interest in the Taurus .45 caliber handgun.

On February 9, 2015, the undersigned entered an Order finding that the Complaint was not filed within the 90-day period specified by § 983(a)(3) as to Jeffery Tubbs' claim of ownership of the Currency. (*See* doc. 24, at 7.) The February 9 Order directed the Government and Jeffery Tubbs to submit supplemental briefs concerning the implications of such a finding, which they have now done. (*See* docs. 29, 31.) During the supplemental briefing process, Jeffery Tubbs filed a Motion to Strike (doc. 30) the Government's brief and exhibits.

At the close of the initial round of briefing on Jeffery Tubbs' Motion to Dismiss, the Government filed a Motion to Strike (doc. 22) the Claims of all claimants, as well as the Answer of Norman Tubbs and Joacandra Childs, for noncompliance with Supplemental Rule G(5). Claimant Jeffery Tubbs has filed a Response (doc. 28) to the Motion to Strike, as well as an Amended Claim (doc. 26) for which he has not received leave of court. All three claimants also filed a Motion for Leave to Amend (doc. 25) their claims and/or answers.

II.   Analysis.

    A.   *The Government's Motion to Strike / Claimants' Motion to Amend.*

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), which apply to this action, provide that the Government "may move

to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing." Supplemental Rule G(8)(c)(i). Those same rules provide that such a motion "must be decided before any motion by the claimant to dismiss the action." Supplemental Rule G(8)(c)(ii)(A). For that reason, the starting point for analyzing the multiple interlocking motions and overlapping issues presented by the parties is the Government's Motion to Strike filed pursuant to Supplemental Rule G(8).

The Government contends that all Claims submitted by Jeffery Tubbs, Norman Tubbs and Joacandra Childs (collectively, the "Claimants") must be stricken under Supplemental Rule G(8)(c) because they do not comport with Supplemental Rule G(5)(a)(i), which provides that a claim must "(A) identify the specific property claimed; [and] (B) identify the claimant and state the claimant's interest in the property." *Id.* By simply stating in conclusory terms in each Claim that the claimant has a 100% ownership interest in specific property, the Government argues, Claimants have not satisfied Supplemental Rule G(5)(a)(i)(B). Substantial authority supports the Government's position that a forfeiture claimant must expound on the nature of his or her interest in the subject property with some specificity, rather than summarily declaring, "It's mine," as Claimants in this case have effectively done. *See, e.g., United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 562 (8th Cir. 2014) (to satisfy Supplemental Rule G(5)(a)(i)(B), "[t]he claimant's interest in the property must be stated with some level of specificity").[1]

In response to these authorities, Claimants do not plausibly maintain that their Claims satisfy the requisite level of specificity under Supplemental Rule G(5) as originally filed. Instead, they request leave to amend those claims via Motion to Amend (doc. 25) filed on February 16, 2015. By operation of Supplemental Rule G(1), the Motion to Amend is governed

---

[1] *See also United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1118-19 (9th Cir. 2004) (recognizing that because "the danger of false claims in these proceedings is substantial," courts require more than "conclusory or hearsay allegations of some 'interest' in the forfeited property"); *United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1112 (5th Cir. 1992) (holding "that a bare assertion of ownership of the *res*, without more, is inadequate to prove an ownership interest sufficient to establish standing"); *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp.2d 560, 563 (D. Md. 2013) ("numerous courts have held that a claim that makes only a 'bald assertion of ownership' is insufficient to comply with the rule"); *United States v. $304,050.00 in U.S. Currency*, 2012 WL 4953126, * (M.D. Fla. Oct. 17, 2012) ("Requiring more than 'a bald assertion of ownership' is consistent with the approach taken by other courts.") (citations omitted).

by Rule 15(a)(2), Fed.R.Civ.P., which provides that leave to amend pleadings is freely given when justice so requires. The Government has not filed an opposition to the Motion to Amend, nor does there appear to be any viable basis for opposing it. The Court has no information and no reason to believe that Claimants' proposed amendments would be futile, unfairly prejudicial, or offered for an improper purpose; therefore, the Motion to Amend is **granted**. The Amended Claim (doc. 26) filed by Jeffery Tubbs on February 17, 2015 is accepted as filed, and supersedes the previous iteration of his Claim. For whatever reason, claimants Norman Rean Tubbs and Joacandra L. Childs did not submit proposed Amended Claims contemporaneously with the Motion to Amend. To remedy that omission and avoid further delay, Norman Tubbs and Joacandra Childs are **ordered** to file Amended Claims that satisfy the specificity requirements of Supplemental Rule G(5)(a) on or before **April 24, 2015**. The Government's Motion to Strike is **granted** as to the Claims of Norman Tubbs and Joacandra Childs, provided, however, that those Claimants may preserve and pursue their claims herein by filing proper Amended Claims that comport with the aforementioned directives.

With regard to Jeffery Tubbs' Amended Claim (doc. 26), he has now replaced the conclusory allegations of ownership interest in his original Claim with substantial factual detail demonstrating the nature and basis of his purported interest in each of the Currency and the Taurus .45 caliber handgun. The Government has not suggested that this Amended Claim flunks the specificity requirements of Supplemental Rule G(5), nor has it advanced any other argument that, in the wake of his submission of the Amended Claim, Jeffery Tubbs lacks statutory standing. Accordingly, the Government's Motion to Strike is **moot** as to the Claim of Jeffery Tubbs because, during the pendency of said Motion, that claimant successfully filed an Amended Claim to eliminate the very pleading deficiencies to which the Government objected.

Finally, the Government's Motion to Strike takes claimants Norman Tubbs and Joacandra Childs to task for their Answer. By rule, a claimant in a forfeiture proceeding "must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supplemental Rule G(5)(b). These two Claimants timely filed a joint Answer (doc. 17) on January 16, 2015, some 11 days after filing their Claims. Nonetheless, the Government objects that this Answer contains a conclusory "general denial" of the Complaint. This objection is meritorious. General denials of all allegations in a complaint are almost never appropriate under the Federal Rules of Civil Procedure, which apply to this pleading question by operation of

Supplemental Rule G(1).  *See Mortensen v. Mortgage Electronic Registration Systems, Inc.*, 2010 WL 3339492, *2 n.7 (S.D. Ala. Aug. 23, 2010) ("General denials are almost always improper under the Federal Rules of Civil Procedure."); *Matter of Crawford*, 2 B.R. 589, 592 (Bankr. N.D. Ill. 1980) ("A general denial is appropriate only where the pleader intends in good faith to controvert the preceding pleading."); *Gulf Oil Corp. v. Bill's Farm Center, Inc.*, 52 F.R.D. 114, 118-19 (W.D. Mo. 1970) (declaring that "[g]eneral denials or the equivalent are no longer permitted under the Federal Rules of Civil Procedure.").[2]  Under Rule 8(b)(2), Fed.R.Civ.P., denials set forth in an answer "must fairly respond to the substance of the allegation." *Id.*  Moreover, a general denial such as that offered here is appropriate only when a party "intends in good faith to deny all the allegations of a pleading – including the jurisdictional grounds."  Rule 8(b)(3).  By contrast, "[a] party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted." *Id.*  Claimants Norman Tubbs and Joacandra Childs have not done so; therefore, the Motion to Strike is **granted** as to their Answer, and such pleading is **stricken**.  That said, the Court understands from Claimants' Motion to Amend (which has already been granted, *supra*) that Norman Tubbs and Joacandra Childs wish to amend their Answer to correct this pleading defect.  To that end, they are **ordered** to file an Amended Answer that complies with the above requirements on or before **May 8, 2015**.[3]

---

[2]   Indeed, one prominent commentator has opined that the use of general denials "has been sharply restricted" under the Federal Rules of Civil Procedure and that "an answer consisting of a general denial will be available to a party acting in good faith only in the most exceptional cases."  Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1265; *see also* 2 *Moore's Federal Practice*, § 8.06[4] (3d ed.) ("Because of the very broad nature of a general denial, as well as the duty to respond in good faith after reasonable inquiry, general denials are rarely appropriate responses to multi-faceted statements within claims for relief when numerous facts are alleged together.").  This is not such an exceptional case.

[3]   Also in the Motion to Strike, the Government suggests that it was improper for Norman Tubbs and Joacandra Childs to file their Answer as a singular, joint document.  The Government is incorrect on this point.  Civil defendants in federal court routinely file joint answers under Rule 8, Fed.R.Civ.P.  There is no impropriety in doing so.  In the absence of contrary authority (which the Government has not cited), this Court will not require each Claimant to file a separate, redundant Answer, which would needlessly squander litigant resources and clutter the court file with no countervailing legal, practical or procedural benefit.  Accordingly, the Government's objection to claimants Norman Tubbs and Joacandra Childs submitting a joint Answer is **overruled**.

### B. Jeffery Tubbs' Motion to Dismiss.
#### 1. Nature of the Motion / The February 9 Order.

As discussed *supra*, Jeffery Tubbs has now filed an Amended Claim that sets forth sufficient factual detail as to his ownership interest in the Currency to satisfy Supplemental Rule G(5) and principles of statutory standing. For that reason, it is appropriate to turn once again to Jeffery Tubbs' pending Motion to Dismiss, wherein he challenges the timeliness of the Government's civil forfeiture action with respect to the defendant Currency. On February 9, 2015, the undersigned entered an Order (doc. 24) recognizing that the relevant statute provides as follows: "Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture …." 18 U.S.C. § 983(a)(3)(A). The statute further provides that if, within such 90-day period, the Government neither files a civil forfeiture complaint nor returns the property pending the filing of such a complaint, then "the Government shall promptly release the property … and may not take any further action to effect the civil forfeiture of such property." 18 U.S.C. § 983(a)(3)(B).

The central issue underlying Jeffery Tubbs' Motion to Dismiss was (and still is) whether the Complaint in this action must be dismissed for failure to comply with the 90-day filing deadline specified in § 983(a)(3)(A). The Government maintained that the 90-day clock began with the receipt of Tubbs' claim by the Secret Service Asset Forfeiture Division on September 5, 2014, in which case the Complaint (which was filed on December 4, 2014) would have been timely within the meaning of § 983(a)(3)(A). By contrast, Tubbs' position was that the 90-day period commenced with the UPS Next Day Air delivery of his claim to the designated Secret Service mailing address on September 3, 2014, some 92 days before the Government filed its Complaint. Succinctly put, the issue was whether the Government's 90-day deadline for filing a complaint was triggered by delivery of Tubbs' claim to the designated mailing address or, alternatively, by the Secret Service Asset Forfeiture Division's actual receipt of that claim two days later.[4]

---

[4] The Government's supplemental submission explains the discrepancy between the date of delivery to the agency and the date of receipt by the Secret Service Asset Forfeiture Division. A Secret Service official named Kevin Dye indicates that all mail sent to the Secret Service's Washington, DC offices is delivered to a remote delivery site for security screening, then sorted at Secret Service headquarters for internal distribution. (Dye Decl. (doc. 29, Exh. 2), ¶¶ 3-5.) According to Dye, "there is a time lag of typically a couple of days between … receipt
(Continued)

After careful examination of extant case authorities and relevant policy considerations, the Court resolved this legal issue in the February 9 Order as follows: "[A] claim is 'filed' for § 983(a)(3)(A) purposes upon delivery to the designated agency at the address specified in the notice to interested parties, not when it is time-stamped as having reached the desk of a particular person or division of that agency." (Doc. 24, at 9.)  Here, Tubbs' claim of ownership of the Currency was delivered to the Secret Service at the address specified in the notice to interested parties on September 3, 2014; therefore, the February 9 Order held, the period fixed by § 983(a)(3)(A) for the Government to commence a civil forfeiture action as to the Currency began running on September 3 and expired 90 days later on December 2, 2014, some two days before the Government filed its Verified Complaint for Forfeiture *In Rem* on December 4, 2014.  The upshot of this analysis, and the conclusion of the February 9 Order, is that the Complaint was filed 92 days after delivery of the claim, and hence outside the 90-day window prescribed by 18 U.S.C. § 983(a)(3)(A).  Left unanswered by the February 9 Order (because the parties did not brief it) is what the implications of that conclusion are, and in particular whether untimeliness of the Complaint mandates its dismissal as to the defendant Currency.  The Court ordered supplemental briefing by the parties to address that narrow question, which briefing has now been completed.  (*See* docs. 29 & 30.)[5]

---

of claims at the remote scanning location and the Asset Forfeiture Branch's opening, stamping in, and reading the mail for content/processing." (*Id.*, ¶ 6.)  That narrative appears consistent with what happened here.

[5]     Along with his supplemental brief, claimant Jeffery Tubbs filed a Motion to Strike (doc. 30), wherein he objects that the Government's supplemental brief diverges from the parameters authorized in the February 9 Order and that the Government's exhibits extend beyond the realm of the pleadings and should therefore be stricken.  Both objections are meritless.  With respect to the former, the February 9 Order authorized supplemental briefing on whether the untimeliness of the Complaint requires its dismissal, and the Government's supplemental brief addresses precisely that question by arguing that its tardiness should be excused pursuant to the doctrine of equitable tolling.  With respect to the latter, Jeffery Tubbs' Motion to Dismiss relies extensively on exhibits beyond the pleadings to show untimeliness.  (*See* doc. 14, Exh. A.)  Because his Motion to Dismiss expressly rests on matters outside the pleadings, Jeffery Tubbs cannot now be heard to object that the Government's exhibits on the subject of equitable tolling are improper because they too go beyond the pleadings.  Yet that is precisely what he has done.  Through his Motion to Dismiss, Tubbs has tasked this Court with going outside the pleadings to determine whether the Complaint is time-barred as to the defendant Currency.  The Court will receive the Government's evidence outside the pleadings as it bears on that question, just as it
(Continued)

### *2.     Equitable Tolling.*

In its supplemental filing, the Government urges application of principles of equitable tolling to excuse the nominally untimely Complaint.  Multiple district courts have concluded that equitable tolling is available in the context of § 983(a)(3)(A) civil forfeiture actions.  *See United States v. $229,850.00 in U.S. Currency*, --- F. Supp.3d ----, 2014 WL 4793704, *10-11 (D. Ariz. Sept. 25, 2014) (concluding that "the doctrine of equitable tolling applies to § 983(a)(3)(A)" because that statute is nonjurisdictional, "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling," no circumstances overcome the presumption as to § 983(a)(3)(A), and the statutory language "supports the conclusion that the 90-day deadline is subject to some flexibility"); *United States v. $39,480.00 in U.S. Currency*, 190 F. Supp.2d 929, 931-32 (W.D. Tex. 2002) (applying equitable tolling in § 983(a)(3)(A) context); *United States v. Thirty-Four Thousand Nine Hundred Twenty-Nine and 00/100 Dollars ($34,929.00) in U.S. Currency*, 2010 WL 481250, *3 (S.D. Ohio Feb. 5, 2010) ("the Court shall apply equitable tolling to the ninety-day filing period set forth in § 983(a)(3)(A)"); *United States v. Nine Thousand Six Hundred Thirty Dollars ($9630.00) in U.S. Currency*, 2006 WL 3813590, *3 (D. Utah Dec. 21, 2006) (similar).[6]  Claimant Tubbs makes no compelling showing that these cases were wrongly decided or that equitable tolling is categorically unavailable in the § 983(a)(3)(A) context.  For reasons specified in detail in *$229,850.00 in U.S. Currency*, it appears that in an appropriate case, the doctrine of equitable tolling may excuse the Government's technical non-compliance with the 90-day filing period specified by § 983(a)(3)(A).

---

has received Tubbs' evidence previously submitted on that very issue.  If the Court were strictly to enforce the restriction on consideration of materials outside the pleadings that Tubbs now invokes, then his Motion to Dismiss would have been summarily dismissed at its inception for relying on such materials.  Claimant cannot have it both ways.  Tubbs' laundry list of other objections (*i.e.*, that the exhibits are "inadmissible hearsay, self-serving, without personal knowledge, unauthenticated, irrelevant and/or lack the proper foundation" (doc. 30, ¶ 6)) is overruled for want of supporting argument or development.  In short, Tubbs' Motion to Strike is **denied** in its entirety.

[6]     More generally, the Eleventh Circuit has explained that "[u]nless Congress states otherwise, equitable tolling should be read into every federal statute of limitations."  *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998).

The next question is whether this is an appropriate case for equitable tolling. The cornerstone of the Government's showing is that it acted in good faith. Again, Jeffery Tubbs' claim was delivered to the Secret Service's remote delivery site on September 3, 2014, but was not received by the Secret Service's Asset Forfeiture Division until September 5, 2014. As noted in the February 9 Order, the question of which date commences the 90-day filing deadline under § 983(a)(3)(A) has not been conclusively resolved by Congress or the federal courts (although the emerging consensus is that the date of delivery to the remote delivery site governs). The Secret Service's cover letter to the United States Attorney's Office in Mobile, Alabama, concerning Jeffery Tubbs' claim stated as follows: "The claim was shipped on 09/02/2014 and received by this office on 09/05/2014." (Doc. 29, Exh. 1.) Thus, the only date provided to the Government's attorneys was the September 5 date on which the Asset Forfeiture Division received Tubbs' claim. The Secret Service did not notify the Government's lawyers that the claim had actually been delivered to a designated remote delivery site two days earlier. The point is that the Government's attorneys knew only about the September 5 date (which was a colorable date for triggering the § 983(a)(3)(A) period), and relied on that information from the Secret Service in counting the 90 days and timing the filing of the Complaint. Such a course of action was not correct, but it evinces good faith. Plainly, the Government was not engaged in some sort of intentional scheme to violate the 90-day deadline and retain possession of the Currency for two extra days without initiating forfeiture proceedings.

      The circumstances supporting equitable tolling here go beyond the Government's good faith. All indications are that the Government was diligent in pursuing this civil forfeiture action against the Currency. Moreover, Jeffery Tubbs cannot plausibly have incurred prejudice during the two-day overrun of the statutory 90-day period, and does not purport to have done so. By contrast, the prejudice to the Government if the Motion to Dismiss were granted would be severe.[7] Dismissing the Government's Complaint as to the Currency on timeliness grounds would be a particularly harsh result here, given the aforementioned ambiguity in the applicable

---

[7] It has been suggested that application of the equitable tolling doctrine in the § 983(a)(3)(A) context is, at least in part, an exercise in balancing relative prejudice to the parties. *See Beck v. United States*, 2011 WL 862952, *5 (D. Md. Mar. 10, 2011) ("Equitable tolling here requires the Court to weigh the prejudice caused to Plaintiffs by tolling the deadline against the prejudice caused to the Government by requiring strict construction of § 983.").

authorities as to which date commences the 90-day period for filing a complaint under § 983(a)(3)(A).  Furthermore, dismissal would conflict with federal courts' strong preference for resolving disputes on the merits, rather than based on technicalities or inadvertent procedural missteps.  Numerous courts have allowed equitable tolling of the § 983(a)(3)(A) filing period in analogous circumstances.  *See, e.g., $229,850.00 in U.S. Currency*, 2014 WL 4793704, at *12-13 (concluding that equitable tolling properly excuses Government's filing of complaint one day after § 983(a)(3)(A) deadline, where law was unsettled as to when 90-day period commenced, Government had been diligent, one-day delay was not prejudicial to claimants, and dismissal would be "especially harsh in light of the minimal delay and the government's diligent attempt to file the complaint within what it deemed to be the statutory period," particularly given "strong preference for resolving disputes on the merits when possible").[8]

In opposition to the Government's application for equitable tolling, claimant Jeffery Tubbs advances three arguments, none of which are persuasive.  First, he block-quotes two pages of text from a 2013 District of Maryland case, *United States v. One 2007 Harley Davidson Street Glide Motorcycle VIN 1HD1KB4197Y722798*, 982 F. Supp.2d 634, 638 (D. Md. 2013),[9] and two

---

[8]   *See also $39,480.00 in U.S. Currency*, 190 F. Supp.2d at 933 (because of the "strong preference for resolving disputes on the merits when possible, instead of determining the outcome solely on technical or procedural grounds," and "in light of the Government's good faith attempt to comply with section 983, the minimal delay in filing the complaint, the lack of prejudice to [claimant], and the potential of severe prejudice to the Government, the Court opts to toll the ninety-day deadline for one day"); *$34,929.00 in U.S. Currency*, 2010 WL 481250, at *3-4 ("Given the government's evident good faith in complying with both the spirit and the letter of the law – there is no apparent attempt to frustrate the purpose of the statutory provisions involved – this Court … shall apply equitable tolling to the ninety-day filing period set forth in § 983(a)(3)(A)."); *$9630.00 in U.S. Currency*, 2006 WL 3813590, at *3 (concluding that "forcing the government to release the property seems inequitable in light of the Government's good faith attempt to comply with section 983" and at odds with court's "strong preference for resolving disputes on the merits when possible"); *United States v. One GMC Yukon Denali*, 2003 WL 27177023, *5-6 (C.D. Cal. Dec. 4, 2003) (applying equitable tolling where "the Government has clearly relied on a good faith belief that [the date the USSS Forfeiture Branch received and date-stamped the claim] was the date the [claim] was filed" and "[t]he Government has clearly not been engaged in a scheme to violate the statutory deadline and keep Claimant's Vehicle an extra day without filing the Complaint").

[9]   In so doing, Tubbs misidentifies the case from which this lengthy quotation was derived as being *United States v. $39,480.00 in U.S. Currency*, 190 F. Supp.2d. 929 (W.D. Tex. 2002).  (*See* doc. 31, at 2-4.)

more pages of text from an unpublished 2013 Eastern District of Michigan case, *United States v. Funds from Fifth Third Bank Account*, 2013 WL 5914101, *8 (E.D. Mich. Nov. 4, 2013). Claimant uses these authorities to argue that a "retroactive good cause" extension is improper here. He is correct that § 983(a)(3)(A) provides that a district court "may extend the period for filing a complaint for good cause shown or upon agreement of the parties." *Id.* However, the Government is not invoking the statutory "good cause" mechanism for enlarging the deadline for filing a complaint; rather, it is proceeding under the legally and analytically distinct doctrine of equitable tolling, which many courts (including this one) have deemed applicable in the § 983(a)(3)(A) context. As such, whether the Government could satisfy the statutory "good cause" requirement for extension in the circumstances presented here is irrelevant.

Second, Tubbs invokes the well-settled principle that "a garden variety claim of excusable neglect, … such as a simple miscalculation that leads a lawyer to miss a filing deadline, … does not warrant equitable tolling." *Holland v. Florida*, 560 U.S. 631, 651-52, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (citations and internal quotation marks omitted). Here, however, we do not have a "garden variety claim of excusable neglect." The Government's argument is not that the deadline to file the Complaint slipped its lawyer's mind, or that there was a calendaring mistake, or that counsel miscounted to 90. To the contrary, this case presents circumstances in which the Secret Service furnished only one of two possible triggering dates to counsel, and where applicable law reflects uncertainty as to which of those dates is binding. These factors readily distinguish this case from the "garden variety excusable neglect" fact pattern in which equitable tolling has been held not to be available. If (as a minority of courts have found) this Court had deemed the 90-day period to commence with the Asset Forfeiture Division's date-stamping of Tubbs' claim, then there would have been no timeliness problem here. Thus, this is not a case where the lawyer missed a deadline because he forgot, or because he counted wrong. The deadline was missed here because this Court interpreted unsettled law in a manner adverse to the Government. This is not "garden variety excusable neglect."

Third, Tubbs asserts that equitable tolling is limited to situations in which the adverse party engaged in wrongful conduct or where extraordinary circumstances beyond the party's control prevented a timely filing. Neither situation is present here. The trouble with this line of reasoning is that it too narrowly cabins the equitable tolling doctrine by chaining it to certain defined categories of circumstances, in derogation of the doctrine's equitable and discretionary

nature.  No hard-and-fast rules govern the discretionary application of equitable tolling.  *See, e.g., Holland*, 560 U.S. at 649-51 (explaining that equitable tolling decisions "must be made on a case-by-case basis," "emphasizing the need for flexibility" and "for avoiding mechanical rules," and not "requiring a *per se* approach") (citations omitted); *Downs v. McNeil*, 520 F.3d 1311, 1321 (11th Cir. 2008) ("In the words of Justice Frankfurter, 'Equity eschews mechanical rules; it depends on flexibility.'") (citation omitted); *One 2007 Harley Davidson Street Glide Motorcycle VIN 1HD1KB197Y722798*, 982 F. Supp.2d at 641 ("equitable tolling is a discretionary doctrine that is not amenable to hard-and-fast rules").  To the extent that Tubbs argues otherwise, such a contention is not legally supportable.  In other words, neither the absence of wrongful conduct attributable to Tubbs nor the lack of extenuating circumstances beyond the Government's control necessarily bars this case-specific request for equitable tolling.

In light of the foregoing, the Court concludes that equitable tolling is appropriate in this case.  The Complaint filed on December 5, 2014 will not be dismissed as untimely with respect to the defendant Currency.  Claimant Jeffery Tubbs' Motion to Dismiss is therefore **denied**.[10]

### III. Conclusion.

For all of the reasons specified herein, it is **ordered** as follows:

1. The Government's Motion to Strike (doc. 22) is **granted in part**.  Specifically, that Motion is **granted** with respect to the claims and answer of Norman Tubbs and Joacandra Childs.  Those Claims (docs. 11 & 12) and that Answer (doc. 17) are **stricken**, subject to claimants' opportunity to submit amended claims and answer as provided in paragraph 3, *infra*;

---

[10] This ruling comes with a caveat.  The authorities recited above reflect that this fact pattern (*i.e.*, one in which the Government files a forfeiture complaint within 90 days after the Secret Service Asset Forfeiture Division receives the claim, but more than 90 days after such claim was delivered to the Secret Service's remote delivery site) has arisen with some frequency in recent years.  This recurring problem could be eliminated by minor procedural improvements either at the agency level or at the U.S. Attorney's Office level.  Equitable tolling is not a sure bet, and may become less so as the growing body of law delineating the date of mailroom receipt as triggering the § 983(a)(3)(A) filing deadline becomes more entrenched, more widespread and more emphatic.  As such, the Government would be wise to take to heart its representation in the supplemental brief that "[t]o deal with this in the future, the United States will adjust its deadline calculations accordingly."  (Doc. 29, ¶ 5.)

2.       The Government's Motion to Strike (doc 22) is **moot** as to the Claim of Jeffery Tubbs because, during the pendency of said Motion to Strike, Jeffery Tubbs successfully filed an Amended Claim (doc. 26) that supersedes his original, defective Claim;

3.       Claimants' Motion to Amend Claims and/or Answers (doc. 25) is **granted**. Claimant Jeffery Tubbs' Amended Claim (doc. 26) is accepted as filed, and has become his operative claim. Claimants Norman Tubbs and Joacandra Childs are **ordered** to file Amended Claims conforming with the requirements herein on or before **April 24, 2015**, and an Amended Answer (which may be, but does not have to be, submitted as a joint document) conforming with the requirements specified herein on or before **May 8, 2015**;

4.       Claimant Jeffery Tubbs' Motion to Strike (doc. 30) is **denied**;

5.       Claimant Jeffery Tubbs' Motion to Dismiss (doc. 14) is **denied**; and

6.       Claimant Jeffery Tubbs is **ordered** to file an Answer, pursuant to Supplemental Rule G(5)(b), as to his claims of interest in both the Currency and the Taurus .45 caliber handgun on or before **April 24, 2015**.

DONE and ORDERED this 13th day of April, 2015.

                                             s/ WILLIAM H. STEELE
                                             CHIEF UNITED STATES DISTRICT JUDGE